### JOHN RUFFIN V. THE STATE.

No. 10839.   Delivered June 1, 1927.

Rehearing denied Oct 12, 1927.

**1.—Murder—Continuance—For Cumulative Testimony—Properly Refused.**

Where, on a trial for murder, appellant requested a continuance on account of an absent witness and the facts which he was expected to testify to, was elicted from two other witnesses on the trial, and was not contradicted by the state, the refusal of the continuance would not warrant a reversal of the case. See Duncan v. State, 30 Tex. Crim. App. 1, and other cases cited.

**2.—Same—Continuance for Character Witnesses—Properly Refused.**

Where appellant requested a continuance on account of the absence of character witnesses, and there were numerous witnesses who testified as to appellant's character on the trial, no reversal error is shown. See cases above cited.

ON REHEARING.

**3.—Same—New Trial—Properly Refused.**

Where appellant asked for a new trial on account of the refusal of his request for a continuance, for absent witnesses, and the facts expected

to be proven by such witness were testified to by other witnesses on the trial and were not contradicted, there was no abuse shown by the court's discretion in refusing a new trial. See Art. 543, subdiv. 6, C. C. P. 1925.

**4.—Same—New Trial—Not a Matter of Right.**

The granting of a new trial by reason of a refusal of a continuance, is not a matter of absolute right, but in passing upon it the trial judge exercises a sound judicial discretion. A reversal of his action will take place, only in those cases where from the evidence adduced upon the trial, the appellate court is impressed with the conviction that it is reasonably probable that if the absent witness had been before the jury, a verdict more favorable to the accused would have resulted. See Keel v. State, 84 Tex. Crim. Rep. 47 and other cases cited in opinion on rehearing.

**5.—Same—Charge of Court—On Threats—Held Correct.**

The law on threats and apparent danger was correctly and cogently presented in the court's main charge and clearly submits, in an affirmative manner appellant's defensive theory, and in some respects, gives the statute a scope more favorable to the accused than the law demands.

Appeal from the District Court of Marion County. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction for murder, penalty, ten years in the penitentiary.

The opinion states the case.

*P. G. Henderson* of Jefferson, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction of murder, punishment ten years in the penitentiary.

Appellant and deceased were brothers, both married and living not far apart on their father's farm. We gather from the record that deceased had not finished gathering his crop when appellant turned a cow into the field in which both had farmed that year. Deceased came to appellant's house; they had hot words, following which deceased returned hastily to his home near by, according to the testimony of appellant and his witness, Jones, threatening to get his gun and come back and kill appellant. Jones and appellant testified they saw deceased get down and go into his house and come out and start pretty fast back toward appellant's house, but the wife and sister of deceased caught him, and witnesses said they heard him tell them to turn him aloose, that he was going to kill that s— of a b—, and that if they did not let him do it then he would next week. They

further said the women carried deceased back into his house, and presently he came out and came on down to appellant's house, the women coming with him holding to the bit of the bridle on the animal he was riding. As to what occurred at the home of appellant when deceased got there, there is sharp conflict, the two women swearing that appellant shot deceased in the back with buckshot and that deceased was doing nothing at the time. Appellant and Jones swore that when deceased rode up appellant asked him "Well, Early have you come back to kill me?" To which deceased replied that he was damn right, that he was going to kill appellant, and that at this juncture, deceased put his hand in his bosom, whereupon appellant raised up his gun, firing once in the air but a second shot into the body of deceased, from which shooting deceased died that night. It is admitted that deceased had no weapon, and the appellant based his right to kill on apparent danger as the matter appeared to him at the time. Jim Jones, Sr., swore for the defense that he was about a quarter of a mile from the place of the shooting, and that his son David, who was an eye witness, came over and told him what had been done. He went to the place and helped carry deceased to his home. On the way deceased told him that appellant, "Got me down but if it hadn't been for Eldora and Georgia I would have got him." David Jones testified that deceased said to him, "G—d d—n him, he got me but I am not afraid of him yet * * * if it hadn't been for my wife I would have got him." No witness for either side testified to any movement, word, act, or demonstration on the part of the wife and sister of deceased *at the place of the killing* which could be construed as having hindred or prevented deceased *from making any attack on appellant* which he might have then purposed.

In this condition of the record we are called on to say whether the refusal of a continuance because of the absence of Jim Jones, Jr., was error. By him appellant expected to prove that while assisting in the removal of deceased to his home after the shooting, the latter said if it had not been for his wife and sister he would have killed appellant at the time. It is plain that this is substantially what was testified to on the trial by Jim Jones, Sr., and David Jones, and the making of this statement is not disputed. It is further clear that deceased did not mean by this statement to say any movement or attempt of his at the scene of the killing was frustrated or prevented by his wife and sister, but that he referred to what took place at his house before coming to the scene of the shooting, it being shown by witnesses for

both the state and the defendant that the wife and his sister at the house remonstrated with him and insisted that he not go down to kill appellant and that he have no further trouble with him. From no point of view can we see injury to appellant by reason of the absence of Jim Jones, Jr. The wife and sister of deceased testified to the threatening acts, words and conduct of deceased at his home, to their remonstrance and interference with his purpose to immediately return and have trouble with appellant, and to their persuasion that he change his plan. The application for continuance was also made on account of the absence of other witnesses, but we observe that they were witnesses to character, and that witnesses who testified on the trial amply supplied testimony on said issue without dispute. We deem the refusal of the application for continuance no abuse of the discretion of the trial court. Duncan v. State, 30 Tex. Crim. App. 1; Parks v. State, 35 Tex. Crim. Rep. 379; Wright v. State, 37 Tex. Crim. Rep. 631.

There are two bills of exception complaining of the refusal of special charges, but examination of the main charge makes apparent the fact that the court fully covered the legal issues involved in said special charges, and that the instructions given were as pertinent and as favorable to appellant as appears in the special charges referred to.

The evidence seems ample to support the verdict and judgment. Our attention is called to the fact that the judgment and sentence ignore the provisions of the indeterminate sentence law, and that appellant is adjudged guilty and his punishment fixed both in the judgment and sentence at ten years confinement in the penitentiary. The judgment and sentence will be reformed so as to adjudge and sentence appellant to confinement for a period of not less than five nor more than ten years in the penitentiary, and as reformed the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—A review of the record in the light of the motion for rehearing leads to the conclusion that the denial of a new trial sought upon the ground that there was error in overruling the motion for a continuance, does not present error requiring or warranting a reversal of the judgment. The facts upon which the appellant's contention is based appear in the original opinion. The evidence was definite and uncontroverted that while the deceased was at his home, he

expressed the intention and desire to kill the appellant but was caused to desist through the importunities and activities of his wife and sister; that he subsequently came unarmed to the home of the appellant and was there killed; that after he was shot he said in the presence of three witnesses that if it had not been for his wife he would have killed the appellant. Two of these witnesses were present upon the trial and testified to the declaration mentioned by the deceased. The third witness to the same fact was absent, and it was for the lack of his testimony that the motion to continue was sought. That the deceased made the declaration imputed to him by the two witnesses mentioned was contradicted by none. The trial court, in the light of the verdict and the entire record, refused to grant a new trial. The statutory law is embraced in Subdivision 6 of Art. 543, C. C. P. 1925 (old Code, Art. 608), in which the declaration is made that a continuance is not a matter of right, but is within the discretion of the trial court, to be reviewed on the motion for new trial in the light of the developments on the trial. In times too numerous to recount the provision of the statute mentioned have been interpreted by this court, as illustrated by the annotations under subdivision 6, Art. 608, Vernon's Tex. Crim. Stat., 1926, Vol. 2, and Vernon's Tex. Crim. C. C. P., 1925, Art. 543. From one of the cases we quote:

"The continuance is not a matter of absolute right, but in passing upon it the trial judge exercises a sound judicial discretion, subject to review, and its abuse when prejudicial, often results in reversal. Branch's Ann. P. C., Sec. 306, and cases there cited. A reversal will take place, however, generally speaking, in those cases only where from the evidence adduced upon the trial, the appellate court is impressed with the conviction that it is reasonably probable that if the absent witness would have been before the jury a verdict more favorable to the accused would have resulted." (Keel v. State, 84 Tex. Crim. Rep. 47).

Applying this construction to the facts at hand, it seems clear that the record would not justify this court in declaring that in refusing a new trial the learned trial judge abused the discretion which, under the statute, he was privileged to exert. Many analogous cases may be found. Among them are Bennett v. State, 95 Tex. Crim. Rep. 70; Hughes v. State, 95 Tex. Crim. Rep. 65.

In paragraph 10 of the charge the court instructed the jury upon the law of self-defense, embracing both real and apparent danger, including the subject of threats.

In paragraph 11 is embraced a separate charge touching the law of threats as contained in Art. 1258, P. C., 1925, (old code, Art. 1143) wherein it is said in substance that one charged with homicide may introduce evidence of threats made by the deceased, "but the same shall not be regarded as affording a justification for the killing unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made." The paragraph appears quite comprehensive, conveying to the jury the information that the accused was privileged to act where the intention to execute the threats was manifested by either acts or words or both. The only exception to this charge was that in which it was asserted that it was not a submission in an affirmative manner of the appellant's defensive theory. We think the criticism is not sound. The charge clearly submits in an affirmative manner the defensive theory mentioned and in some respects gives the statute a scope more favorable to the accused than the law demands. It embraces the same idea as that contained in the special charge requested by the accused, save that it was broader and more favorable to him.

The motion for rehearing is overruled.

*Overruled.*